UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DESIGN BASICS, LLC, and<br>CARMICHAEL & DAME DESIGNS, INC. | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| | ) | No. 17 C 7432 |
| v. | )<br>) | Judge Sara L. Ellis |
| WK OLSON ARCHITECTS, INC.,<br>WILLIAM K. OLSON, R&D CUSTOM<br>HOMES, DANIEL DEVIVO and<br>STEVEN SPANO, | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiffs Design Basics, LLC ("Design Basics") and Carmichael & Dame Designs, Inc. ("CDD"), architectural design companies that create home plans and sell design licenses, discovered home plans on Defendants WK Olson Architects, Inc. ("WK Olson") and R&D Custom Homes' websites that appear to copy those of Plaintiffs. To protect their copyrights, Plaintiffs filed this suit against WK Olson, its controlling shareholder William K. Olson, R&D Custom Homes, and its controlling shareholders, Daniel DeVivo and Rocky Spano.[1] The Court dismissed the first amended complaint, finding Plaintiffs had only set forth conclusory allegations to support their claims. In their second amended complaint, Plaintiffs reallege claims for willful and non-willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 106, vicarious infringement against the controlling shareholders, and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202. WK Olson and Olson again move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because

---

[1] Only WK Olson and Olson have filed appearances in the case. The Court entered a default against the remaining defendants on January 11, 2018. *See* Doc. 23.

Plaintiffs have provided additional details of substantial similarity and access and the Court cannot as a matter of law determine that Plaintiffs' design plans include no protectable elements or arrangement of elements that WK Olson allegedly copied, the Court allows the non-willful infringement and vicarious infringement claims to proceed. The willful infringement claims may also proceed because Plaintiffs have sufficiently alleged WK Olson's knowledge of the infringing conduct. But the Court dismisses the DMCA claim where Plaintiffs do not allege WK Olson removed copyright management information from their original works but rather only that they copied elements of those works into virtually identical floor plans.

## BACKGROUND[2]

Design Basics, a limited liability company, creates, markets, publishes, and licenses the use of "architectural works." Doc. 51 ¶ 2. CDD engages in similar work to Design Basics, and indeed, one of CDD's principals purchased Design Basics with another individual in 2009. Olson controls WK Olson, another corporation involved in residential architecture and design.

Plaintiffs have created over 350 new home design plans since 2009, and have an inventory of over 2,800 plans, which they have registered with the United States Copyright Office. Plaintiffs offer single-build licenses for their home designs for a fee ranging from $700 to $6,000. Since 2009, they have generated over $6 million in licensing revenue from over 8,000 construction licenses. Each of Plaintiffs' designs takes between 55 and 90 hours to complete and involves creating a preliminary sketch, a redline, and a plan, and then drafting construction drawings. Plaintiffs' designers have ample freedom to create whatever designs they choose, aside from building code requirements such as hallway width and window opening sizes.

---

[2] The facts in the background section are taken from Plaintiffs' second amended complaint and attached exhibits and are presumed true for the purpose of resolving WK Olson and Olson's motion to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

In addition to creating its own designs, Design Basics advertises, markets, and facilitates the sale of several other companies' designs, including CDD's. Design Basics has used various methods to make its design plans available to the public, including through design catalogs, displays at stores like Menards, handouts at conventions and shows, and websites, including its own, www.designbasics.com, and plan broker sites as well. Design Basics significantly cut back on its mailing program between 2006 and 2008. While Design Basics has focused more on its online presence in recent years, it previously marketed its designs primarily through catalog distribution, sending them directly to businesses, including WK Olson. On its website, Design Basics has available free PDFs of the front elevation and floor plan for each home design, with additional documents such as construction drawings available once the customer purchases a license.

Design Basics has found that, as its marketing has increased, particularly with improvements on its website, so has the piracy of its copyrighted home designs. At the same time, its licensing revenue has decreased. One lumberyard's employees admitted to copying Design Basics' works, and Design Basics also encountered a builder that did not even bother changing the names of three of Design Basics' plans that it used without a license. As a result, Design Basics has brought lawsuits to discourage copyright infringement of its architectural works.

While researching infringement cases in Illinois and Indiana at the end of 2015, Paul Foresman, Design Basics' Director of Business Development, came across R&D Custom Homes' website, rdcustomhomes.net. That website's "Floor Plan" section directed him to another webpage run by WK Olson, www.olsonplans.com. Foresman found several designs on www.olsonplans.com that appeared to copy from Plaintiffs' designs. Specifically, these plans,

identified by plan number,[3] appeared to copy from eleven of Design Basics' plans and one of CDD's plans.[4] Design Basics claims WK Olson has copied various elements and features of its and CDD's plans, including, for example, the look and feel of the designs, the sizes and shapes of rooms and individual features such as walls and windows, the elevations of the plan, arrangements of appliances and other features, and the layout and location of rooms. Design Basics also claims a protectable interest in the selection, arrangement, and composition of the elements and features in each of its plans.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[3] Plaintiffs list these eighteen plans by plan number at paragraph 80 of the second amended complaint.

[4] Plaintiffs list these plans by name and copyright registration number at paragraphs 66 and 67 of the second amended complaint. Plaintiffs also attach these plans as exhibits to the second amended complaint.

# ANALYSIS

I.   **Copyright Infringement Claims (Counts 1-8)**

To state a claim for copyright infringement under 17 U.S.C. § 106, Plaintiffs must plausibly allege that (1) they own a valid copyright, and (2) WK Olson copied "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). Here, Plaintiffs allege both willful and non-willful copyright infringement, in addition to claims of vicarious infringement against Olson. The Court addresses them separately, beginning with the non-willful direct infringement claim.

A.   **Non-Willful Infringement (Counts 1-4)**

WK Olson and Olson acknowledge that Plaintiffs hold valid copyrights but again argue that Plaintiffs' claims fail to sufficiently set forth the required second prong of a copyright infringement claim. Plaintiffs may demonstrate copying of constituent elements in two ways: (1) through direct evidence, such as an admission of copying by the defendant; or (2) by showing that the defendant had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012). Plaintiffs claim that WK Olson's plans are "strikingly similar" to the works in question, equating the phrase "strikingly similar" to "virtually identical." *See* Doc. 51 ¶¶ 82, 94; Doc. 63 at 5. Although this could be an attempt at alleging copying through direct evidence, because the parties focus on substantial similarity and access, the Court does the same here. *See Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (noting that "defendants rarely admit to copying the works of others," meaning that at the

pleading stage, plaintiffs may establish the second element of infringement by showing access and substantial similarity to allow the inference that the defendant copied the work at issue).

### 1. Substantial Similarity

To determine substantial similarity, the Court considers whether "the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters*, 692 F.3d at 633–34. To make this determination, the Court "must first identify which aspects of [Plaintiffs'] work, if any, are protectable by copyright," and then analyze "whether the allegedly infringing work is so similar to [Plaintiffs'] work that an ordinary reasonable person would conclude that [WK Olson] unlawfully appropriated the protectable elements of the work." *Nova Design Build, Inc. v. Grace Hotels LLC*, 652 F.3d 814, 817–18 (7th Cir. 2011) (citations omitted) (internal quotation marks omitted).

In response to the Court's prior opinion, Plaintiffs have set forth more detailed allegations of how each of WK Olson's plans directly replicate theirs or include similar features. WK Olson and Olson argue, however, that none of Plaintiffs' identified elements or the combination or arrangement of those elements amount to protectable expression. The Seventh Circuit in recent years has made clear that district courts can address substantial similarity on a Rule 12(b)(6) motion, considering in great detail whether a plaintiff has plausibly alleged that a defendant's work infringes on a copyright. *See Hobbs*, 722 F.3d at 1096 (holding, "as a matter of law," that two songs are not "substantially similar," affirming dismissal of copyright claims on a motion to dismiss); *Peters*, 692 F.3d at 636 (concluding that plaintiff's "claim for copyright infringement fails as a matter of law" at the motion to dismiss stage); *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, No. 16 C 72, 2016 WL 4158957, at *8 (N.D. Ill. Aug. 5, 2016) (collecting cases).

6

This does not impose a heightened pleading standard on Plaintiffs, however. *Carter v. Pallante*, 256 F. Supp. 3d 791, 798 (N.D. Ill. 2017).

In examining another case brought by Design Basics, the Seventh Circuit recently remarked that a plaintiff claiming copyright infringement of a home design or architectural plan will have difficulty satisfying the substantial similarity requirement because "opportunities for originality are tightly constrained by functional requirements, consumer demands, and the vast body of similar designs already available." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100–01 (7th Cir. 2017). Other courts around the country have concluded that many of Plaintiffs' identified similarities do not qualify for copyright protection, though typically these decisions have come at the summary judgment stage where the parties have presented a more developed record or, if at the motion to dismiss stage, where the court has before it both the copyrighted and infringing works. *See, e.g.*, *id.* at 1102–03 (on appeal of a summary judgment decision, engaging in a "close study of [the parties'] plans" and finding that defendant's plans resembled plaintiff's plans, but "only because both sets resemble common home designs"); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1141–44 (10th Cir. 2016) (affirming summary judgment decision concluding that floor plan did not include any protected elements or arrangement of elements); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101–06 (2d Cir. 2014) (reviewing grant of summary judgment for defendant and delineating architectural elements that are and are not protectable); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64–65 (2d Cir. 2010) (finding it proper to determine substantial similarity on a motion to dismiss where the plaintiff attached the works in question to the complaint). Indeed, under the *scènes à faire* doctrine, "a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary,

commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003). As the Seventh Circuit noted, "[t]here are only so many ways to arrange a few bedrooms, a kitchen, some common areas, and an attached garage, so 'not every nook and cranny of an architectural floor plan enjoys copyright protection.'" *Lexington Homes, Inc.*, 858 F.3d at 1102–03 (quoting *Home Design Services, Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016)). The Second Circuit has also found unprotectable "generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on." *Attia v. Soc'y of the N.Y. Hosp.*, 201 F.3d 50, 55 (2d Cir. 1999). Court have also commonly found unprotectable "individual standard features, such as windows, doors, and other staple building components;" "design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity;" "constraints placed on an architect by the way her client plans to use the building;" and "features that are essential or common to the architectural style within which the builder designed the structure." *Buttner v. RD Palmer Enters., Inc.*, No. 5:13-CV-0342 (LEK/ATB), 2015 WL 1472084, at *7 (N.D.N.Y. Mar. 31, 2015) (citations omitted) (internal quotation marks omitted).

Here, however, the Court agrees with Plaintiffs that, at least at this stage, the Court cannot determine as a matter of law that Plaintiffs have not alleged elements of their plans or a combination of elements entitled to copyright protection. *See Hobbs*, 722 F.3d at 1093 & n.4 (reserving the question of whether "a *unique* selection, arrangement, and combination of individually unprotectable elements in a [work] can support a copyright infringement claim," while noting the wealth of authority recognizing that in certain situations such a unique

arrangement is entitled to copyright protection); *Design Basics LLC v. J & V Roberts Invs., Inc.*, 130 F. Supp. 3d 1266, 1277–78 (E.D. Wis. 2015) ("[T]he particular selection, arrangement, and combination of individual elements in one house may be sufficiently original and detailed to be afforded copyright protection."). Although *Lexington Homes* suggests that the Court should not undertake a 30,000-foot review of the plans to determine substantial similarity, the Court does not endorse such an approach here but rather only finds that it cannot engage in the detailed analysis WK Olson seeks at this time. *See Lexington Homes, Inc.*, 858 F.3d at 1105 (rejecting Design Basics' argument that the district court failed to consider the overall look and feel of the plans). While it appears likely that Plaintiffs will have difficulty establishing substantial similarity, particularly in light of *Lexington Homes, Inc.*, the Court cannot make this determination without a more developed record.[5] At this stage, the Court finds that Plaintiffs have sufficiently provided notice to WK Olson of its allegations concerning substantial similarity.

2. **Access**

Next, WK Olson challenges whether Plaintiffs sufficiently alleged access. A plaintiff may allege access through direct receipt of the copyrighted work or such wide dissemination that the defendant can be presumed to have seen it. *Id.* at 1100. The Court may alternatively infer

---

[5] While the Court could have potentially engaged in a more fulsome determination of substantial similarity had Plaintiffs attached the allegedly infringing WK Olson plans to the second amended complaint, WK Olson does not cite to and the Court has not found any authority requiring Plaintiffs to have done so. Plaintiffs' failure to attach WK Olson's plans also does not contravene the Court's direction in its prior Opinion and Order to provide sufficient allegations to allow the Court to determine whether Plaintiffs sufficiently alleged substantial similarity. Doc. 49 at 6–8. WK Olson cites to *Home Design Services, Inc. v. J.F. Schoch Building Corp.*, No. 2:11cv574, 2012 WL 442008, at *4 (E.D. Va. Feb. 10, 2012), but this case does not require dismissal here. There, the plaintiff had "provided no information whatsoever about the allegedly infringing works," *id.*, but Plaintiffs have significantly expanded on their prior blanket assertion of similarity in the second amended complaint. Finally, although Plaintiffs did not provide WK Olson's plans, the Court notes that WK Olson could have attached them to the motion to dismiss as well but did not do so.

access from "proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). Plaintiffs allege that they have extensively marketed their plans, including by mailing plan catalogs and other publications with the plans at issue directly to WK Olson. Additionally, Plaintiffs have posted their plans to their websites. The Seventh Circuit has indicated that "the existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials." *Lexington Homes, Inc.*, 858 F.3d at 1108. But here, Plaintiffs allege more than just online availability. Even though Plaintiffs acknowledge that Design Basics "discontinued the bulk of its mailing program somewhere between 2006 and 2008," Doc. 51 ¶ 55, they specifically allege that "Design Basics mailed plan catalogs and other publications containing the Copyrighted Works directly to Defendants," *id.* ¶ 77. Plaintiffs need not have included allegations as to when the mailings occurred or which works they mailed at which times, as WK Olson argues. At this stage, the allegations of access suffice and the Court will allow Plaintiffs to proceed on their claims of non-willful infringement.

### B. Willful Infringement (Counts 5-8)

In the case of willful infringement, the Copyright Act allows for an increased statutory damage award under 17 U.S.C. § 504(c)(2). Willful infringement occurs where a defendant "knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (citation omitted). WK Olson argues that Plaintiffs have not included any allegations of willfulness. But Plaintiffs have done more than just add the word "willfully" to support an award of increased statutory damages; they have alleged that WK Olson knew of

10

Plaintiffs' copyright and removed the copyright indications from Plaintiffs' plans in an effort to conceal the infringement. These allegations suffice at this stage to suggest willful infringement.

## C. Vicarious Infringement (Counts 1-8)

Plaintiffs also seek to hold Olson vicariously liable for copyright infringement, for which they must first "plead sufficient facts for a valid claim of direct copyright infringement" against WK Olson. *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *5 (N.D. Ill. Dec. 8, 2015). Olson seeks dismissal of the vicarious infringement claims based solely on WK Olson's arguments for dismissal of the direct infringement claim. Because the Court allows the direct non-willful infringement claims to proceed, Plaintiffs may also pursue their vicarious infringement claims against Olson.

## II. DMCA Violations (Count 9)

Finally, the Court addresses Plaintiffs' DMCA claim. The DMCA makes it illegal for a person to knowingly falsify, remove, or alter copyright management information ("CMI"). 17 U.S.C. § 1202. The statute defines CMI as the information conveyed in connection with copies of a work, such as its title, author, copyright owner, the terms and conditions for use of the work, and identifying numbers or symbols referring to the work's copyright information. 17 U.S.C. § 1202(c). Plaintiffs claim WK Olson and Olson violated § 1202 by removing or omitting Plaintiffs' CMI from WK Olson's allegedly infringing plans. Although Plaintiffs have identified the alleged CMI at issue in the case, the Court cannot find they have stated a violation of the DMCA. Plaintiffs claim that, in creating the allegedly infringing floor plans, WK Olson removed CMI from Plaintiffs' original works. "An action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work." *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010).

11

Here, Plaintiffs do not allege WK Olson directly reproduced their plans without CMI. Instead, they contend that WK Olson copied aspects of its original works, with WK Olson's plans appearing "virtually identical" to those of Plaintiffs. Doc. 51 ¶ 82. "[B]asing a drawing on another's work is not the same as removing copyright management information," however. *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496 SOM/BMK, 2014 WL 5798282, at *5, 7 (D. Haw. Nov. 7, 2014) ("'Virtually identical' plans could have been created by redrawing [plaintiff's] copyright management information from [plaintiff's] plans and not including [plaintiff's] copyright management information, but that would not involve any removal or alteration of copyright management information from [plaintiff's] original work."). Therefore, Plaintiffs have not alleged a DMCA violation, and the Court dismisses the DMCA claim with prejudice because further amendment of the claim would be futile.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part WK Olson's and Olson's motion to dismiss [36]. The Court dismisses the DMCA claim (Count 9) with prejudice.

Dated: February 11, 2019

_____
SARA L. ELLIS
United States District Judge